UNITED STATES of America,

v.

Dwight W. WATSON, Defendant.

No. CR.03–125M (JMF).

United States District Court,
District of Columbia.

March 26, 2003.

Bravitt Cola Manley, Jr., Washington, DC, for Defendant.

## DETENTION MEMORANDUM

FACCIOLA, United States Magistrate Judge.

This matter comes before me upon the application of the United States that the defendant be detained pending trial. After a hearing, the government's motion was granted, and this memorandum is submitted to comply with the statutory obligation that "the judicial officer shall—include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

1. On March 17, 2003, at approximately 12:34 p.m., United States Park Police Detective Todd Reid received a call that a subject was driving a tractor both on the grass and in the pond at Constitution Gardens located on The National Mall.

2. Detective Reid responded to the call after Officer Psack arrived on the scene and began conversing with the defendant. The officer attempted to communicate with the defendant by yelling at him, and later received his cellular telephone number.

3. The substance of the conversation with the defendant consisted mainly of why he was at Constitution Gardens. Officer Psack asked the defendant to leave the tractor and exit the National Mall grounds, but he refused. The defendant stated that he had "organic phosphate" and that he would detonate it if approached.

4. As a result, the United States Park Police established a command post and roped off the southside of Con-

stitution Avenue up to 18th Street around the Reflecting Pool, as a crime scene.

5. That area was subsequently expanded after the Metropolitan Police Department, Explosives Organic Division, determined that if the organic phosphate were to be detonated the impact area would span a 500 to 700 foot radius.

6. Buildings and concession stands along Constitution Avenue were evacuated and nearby national monuments were closed to the public.

7. A negotiations site was set up and contact was established with the defendant. He made additional statements about using the explosives, adding that he was "ready to fight" and "willing to die for the cause."

8. On March 18, 2003, the defendant continued to talk about the use of explosives and indicated that he had eighty-two pounds worth of explosives. Throughout the course of the day, the defendant stated that he would "bring D.C. to its knees" and "leave a mark on the Mall never to be forgotten." He also requested that the District be evacuated within 82 hours.

9. Moreover, the defendant stated that he left "Easter eggs" near the Philip Morris sign in Richmond, Columbia Island, and at the Navy/Marine Memorial in Virginia. He indicated that, if the "Easter eggs" were to get wet, they would explode. The Park Police believed that this was a reference to grenades.

10. The defendant also stated that he sent mailings to the 50 state attorneys general offices. Specifically, the defendant said he sent the attorney general for the state of Washington a vial marked "GERM Test 1193." Its toxicity is pending an investigation.

11. During the "standoff" on March 18, 2003, Detective Reid observed the defendant taping a backpack to the side of the tractor, hanging a battery with exposed wires on the tractor, and shielding the interior view of the tractor with his clothing.

12. The defendant communicated to law enforcement that "he would shoot back" if shot at first.

13. On March 19, 2003, at approximately 11:41 a.m., the "standoff" ended. The negotiators had spoken with the defendant during the night and, as a result, he agreed to surrender.

## REASONS FOR DETENTION

An examination of the factors required to be considered by 18 U.S.C.A. section 3142(g) (2000) compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure his appearance as required and his detention is therefore appropriate.

### The Statutory Standard

Defendants who are determined to present a serious risk of flight or who are charged with a crime of violence may be detained pursuant to 18 U.S.C.A. §§ 3142(f)(2)(A) & 3142(f)(1) (2000). If there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or the safety of the community as required, detention is appropriate. 18 U.S.C.A § 3142 (2000).

In determining whether there are conditions of release that will reasonably assure

the appearance of the person as required and the safety of any other person and the community, the judicial officer is to consider:

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
2. The weight of the evidence;
3. The history and characteristics of the person, including
   a. His character, physical and mental condition, family ties, employment, financial resources, length of residence in the community and community ties;
   b. Past conduct, history relating to drug or alcohol abuse;
   c. Criminal history;
   d. Record concerning appearance at court proceedings;
   e. Whether, at the time of the current offense or arrest, the person was on probation, parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law;
4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C.A. § 3142.

An examination of these factors compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure his appearance as required or the safety of the community and his detention is therefore appropriate.

**The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.** The defendant held the city under siege for three days uttering threats to detonate explosives on The National Mall. The crime charged is certainly a violent offense.

**Defendant's character, physical and mental condition, family ties, employment, financial resources, and length of residence in the community.** The defendant is from Whitaker, North Carolina and has no roots in the metropolitan Washington, D.C. area.

**The weight of the evidence.** The government's overwhelming evidence is based upon personal knowledge of the events and direct personal communications with the defendant.

## CONCLUSION

Without objection, the government's motion to detain the defendant is granted. However, even without the concession, I find the defendant not only to be a risk of flight, but also a danger to the community. During the defendant's detention hearing, he erupted into a angry tirade against the government and its policy toward tobacco farmers. His rage was palpable and he displayed absolutely no ability to control himself. It is clear to me that his crusade against the government has overwhelmed his judgment and self control. After witnessing such an outburst, and appreciating the crime charged and his apparent willingness to destroy himself and others to make his point, I find that the defendant is a danger not only to this community but to any community. Therefore, a weighing of all the pertinent facts compels the conclusion that the defendant should be detained pending trial. Because the defendant has absolutely no connection to the Washington, D.C. area, and because I cannot find anything to mitigate the conclusion that this individual poses a serious risk of flight and danger to the community, I find by

clear and convincing evidence that there are no conditions or combination of conditions I could set which would reasonably assure his appearance as required. I will, therefore, order the defendant detained without bond pending trial.